UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) FOR THE DISCLOSURE OF RECORDS AND HISTORICAL CELL SITE (i.e. TOWER/SECTOR) INFORMATION FOR TELEPHONE NUMBERS (860) 543-3180 AND (203) 218-1734 | 2018 JUN 22  A 10: 24<br>MISC. NO. ____ (JGM)  18 mj 1003 JGM<br>U.S. DISTRICT COURT<br>**FILED UNDER SEAL**<br><br>March 19, 2014 |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, through Deirdre M. Daly, United States Attorney for the District of Connecticut, by S. Dave Vatti, Assistant United States Attorney, hereby moves this Court pursuant to 18 U.S.C. § 2703(d) for an Order: (1) requiring AT&T Wireless, a cellular service provider, to disclose historical cell site (i.e., tower / sector) information, for the period of August 1, 2013 through March 18, 2014, pertaining to the cellular telephone numbers (860) 543-3180 ("TARGET TELEPHONE 1") and (203) 218-1734 ("TARGET TELEPHONE 2"), which will referred to collectively as "the TARGET TELEPHONES," as described in Part I of Attachment A hereto and to the proposed Order (hereafter "Attachment A"), (2) precluding AT&T Wireless from disclosing to the subscriber or customers or to any other person this Application, any order issued in connection with this Application, or the fact of disclosure of such records to the requesting governmental entities or the existence of this investigation, pursuant to 18 U.S.C. § 2705(b); and (3) sealing this Application, the Court's Order, and any related documents.

In support of this application, the undersigned states as follows:

## LEGAL BACKGROUND

1. The undersigned is an attorney for the government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and therefore pursuant to 18 U.S.C. § 2703(c)-(d) may apply for an Order as requested herein.

2. AT&T Wireless is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require AT&T Wireless to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(1) and (2).

3. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

5. I am advised of the following information by Special Agent Michael Zeppieri of the Bureau of Alcohol, Tobacco and Firearms ("ATF").

6.      Special Agent Zeppieri is currently working with other members of the ATF, as well as with members of the New Haven Police Department ("NHPD") and other law enforcement officials to investigate Corey GOMES, a.k.a. "Flusey" and "M.U." and Christian TURNER, a.k.a. "P" and "Pistols," and their associates for activities in violation of Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering), Title 21, United States Code, Section 846 (Conspiracy to Distribute Narcotics), and Title 18, United States Code, Section 924(c) (Carrying a Firearm in Connection with a Drug Trafficking Crime). Because this application is being submitted for the limited purpose of obtaining a court order for certain records from AT&T Wireless, I have not included each and every fact regarding this investigation. I have included only those facts necessary to establish the basis for the requested authorization.

7.      ATF is currently conducting an investigation into the activity of a street gang in New Haven, Connecticut, known as the Red Side Guerilla Brims ("RSGB"), which is a set of the Bloods. RSGB formed as an off-shoot of the Bloods street gang in New York State prisons in the mid-1990s. RSGB shares many characteristics with the Bloods, including initiation rituals, the use of elaborate hand signals and code words to communicate covertly, and strict rules of conduct, including rules against cooperating with authorities, or "snitching," and rules requiring retaliation against gang members and others who "snitch," or whenever else ordered by higher ranking members. ATF has acquired, through a known and reliable confidential informant, an RSGB manifest setting out the history of the RSGB, as well as a code of conduct. New members to the gang must be initiated by current members and swear an oath of loyalty. The gang is extremely well organized. ATF has investigated numerous shootings and homicides in

New Haven occurring over the past five years and has determined that RSGB members were responsible for those acts of violence, and that the acts of violence were directly related to gang members' desire to maintain or bolster their membership in the RSGB gang. GOMES and TURNER are members of the RSGB gang. In fact, law enforcement officers, through post arrest statements of other cooperating defendants, has determined that GOMES is the highest ranking member of the RSGB in Connecticut and goes by the names "Flusey" or "M.U."

8. On or about August 26, 2013, the medical examiner determined that Marquise HARRIS, a.k.a. "Quise," then a high ranking member of the RSGB, was murdered by a close range gunshot to the head. The murder occurred at approximately 12:00a.m. Witnesses stated that HARRIS had been conducting a disciplinary act (known as a "9") on Brian GARCIA, another member of RSGB in the backyard of 127 Clay Street, New Haven, when he was shot in the head. On March 12, 2014, Special Agent Zeppieri interviewed a witness of the murder of HARRIS, who stated that, a few hours prior to the murder, he/she heard HARRIS question GOMES about GOMES's knowledge of RSGB history, codes, and rules (known as "G checking"). The witness also stated that, prior to overhearing the G check of GOMES, HARRIS had been conducting a "9" of TURNER, who had suffered a black eye from the "9." According to the witness to whom Special Agent Zeppieri spoke, a likely motive for the murder of HARRIS was that GOMES thought HARRIS's questioning of him about RSGB was disrespectful, since GOMES held a higher rank within the gang. Officers who first responded to the scene of the HARRIS murder observed DELTON PYLES, another known RSGB member, and TURNER at the scene.

9. On or about September 2, 2013, law enforcement personnel arrested PYLES on unrelated charges. Following PYLES' arrest, law enforcement searched PYLES' phone and identified 207-200-0554 as TURNER'S phone. Subsequently, a New Haven Police Department Investigator obtained call detail records for TURNER'S phone. TURNER'S phone records revealed that TURNER'S phone had contact with TARGET TELEPHONE 2 3 times on August 25, 2013 between 9:07p.m. and 9:09p.m., a few hours prior to the HARRIS murder, and 5 times on August 26, 2013 between 3:28a.m. and 4:21a.m., after the HARRIS murder.

10. On or about February 10, 2014, at approximately 8:30p.m., Kyle EDWARDS was shot and killed in New Haven. A witness reported to investigators that immediately prior to EDWARDS' murder, EDWARDS was in an apartment playing video games when EDWARDS stated that he had to go meet someone real quick. EDWARDS then left the apartment with a bag of marijuana that EDWARDS intended to sell. The witness reported that less than a minute later a gunshot went off and EDWARDS was on the ground in the hallway. Investigators located EDWARDS' cell phone and his call history was reviewed. The call history indicated that at approximately 8:29p.m., EDWARDS received a call from TARGET TELEPHONE 1. Investigators subsequently obtained call detail records for TARGET TELEPHONE 1, which included a log of incoming and outgoing phone calls for August 25, 2013 and August 26, 2013. These records indicated a series of seven calls involving EDWARDS and the users of TARGET TELEPHONE 1 and TARGET TELEPHONE 2 in the following order. At 8:20p.m., TARGET TELEPHONE 1 had contact with TARGET TELEPHONE 2. TARGET TELEPHONE 1 then immediately had contact with EDWARDS. Immediately thereafter, there were two calls between TARGET TELEPHONE 1 AND TARGET TELEPHONE 2 at 8:22p.m. and 8:23p.m.

The very next call occurred at 8:29p.m. in which TARGET TELEPHONE 1 contacted EDWARDS. At 8:30p.m., TARGET TELEPHONE 1 first had contact with TARGET TELEPHONE 2 and then immediately had contact with EDWARDS. EDWARDS was shot and killed at around the time that this series of calls concluded.

## REQUEST FOR ORDER

11. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the users of TARGET TELEPHONES 1 and 2 who may have information about or knowledge of the circumstances of the murders of KYLE EDWARDS and MARQUISE HARRIS. Accordingly, the United States requests that AT&T Wireless be directed to produce all items described in Part II of Attachment A to the proposed Order.

12. The United States further requests that the Order require AT&T Wireless not to notify any person, including the subscribers or customers of the account listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. § 2705(b). Such a requirement is justified because the Order relates to an ongoing criminal investigation the full scope and extent of which is neither public nor known to all of the subjects of the investigation. Accordingly, there is reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving subjects an opportunity to destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

13.  The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court in order to avoid disclosing the scope and nature of the investigation prematurely; to avoid compromising the ability of law enforcement authorities to develop further evidence, including evidence in the grand jury; to avoid interfering with the ability of law enforcement authorities to secure the testimony of witnesses; and to avoid compromising the potential for law enforcement authorities to seize relevant evidence later in the investigation.  In short, premature disclosure of the contents of this application and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*SDV*

S. DAVE VATTI
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct11957
United States Attorney's Office
157 Church Street, 23rd Floor
New Haven, CT 06510
(203) 821-3700

## ATTACHMENT A

### I. The Telephone Numbers

The Order applies to certain records and information associated with the following Target Telephone Numbers: (860) 543-3180 and (203) 218-1734.

### II. Records and Other Information to Be Disclosed

AT&T Wireless is required to disclose the following records and other information, if available, to the United States for each telephone number listed in Part I of this Attachment (the "Account"), for the time period of August 1, 2013 to March 18, 2014:

    A.    The following information about the customers or subscribers of the Account:

        1. Names (including subscriber names);
        2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        3. Call detail records, including local and long distance telephone connection records;
        4. Length of service (including start date) and types of service utilized;
        5. Telephone or instrument numbers, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI")); and
        6. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    B.    All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.